## Davis *v.* Cox and Others.

Where the land intended to be embraced in a mortgage is misdescribed, the mortgagee must have the instrument reformed before he can proceed to foreclose.

Bill for foreclosure against subsequent purchasers. The land intended to be embraced in the mortgage was misdescribed therein but correctly described in the deeds to such purchasers. The bill did not allege the misdescription nor seek to have the mortgage reformed; but the evidence showed the misdescription and tended to prove that the purchasers had knowledge of it when they bought the land. The Supreme Court ordered the bill to be dismissed without prejudice, &c.

ERROR to the *Bartholomew* Circuit Court.

STUART, J.—Bill in chancery by *Davis* against *Cox*, the mortgagor, and *Wood*, *Larkin* and *Wood*, subsequent purchasers, to foreclose a mortgage.

The land as described in the bill, is the *south-west* half of the south-west quarter of section *fifteen*, in township nine, of range seven east, &c.

The mortgage, dated *September* 18, 1846, and recorded *December* 19, 1846, was given to secure the payment of 200 dollars, which, as elsewhere appears, was part of the consideration for the land mortgaged, though not so alleged in the bill.

*Cox* and wife made default. *Wood, Larkin* and *Wood* answered. They admit the mortgage on the *south-west* half of the south-west quarter of section *fifteen*, &c., as alleged in the bill; but they set up that on the 17th day of *July*, 1849, *Wood* and *Larkin* were seized in fee of the *west* half of the south-west quarter of section *fifteen*, in township nine, of range seven east, containing 80 acres; and on the day last named, they, *John Wood* and *Joseph Larkin*, in consideration of 600 dollars paid, &c., sold and conveyed the said tract of land to the other respondent, *Ebenezer Wood;* that this deed, dated *July* 17, 1849, was recorded *October* 9, 1849; that the purchase by *E. Wood* from *Wood* and *Larkin* was *bona fide;* and that prior to the consummation of the contract, *E. Wood* had no knowledge, information or notice that the said *Davis* had any claim, interest or lien on the land. He is silent as to his belief. He admits, however, that when the purchase was made by him, he was informed that *Davis* claimed to have a mortgage upon a different parcel of land, viz., the *south-west* half of the *south-east* quarter of section *fifteen*, &c.; that on the 16th of *November*, 1846, *Cox* conveyed in fee to *Wood* and *Larkin* for 600 dollars the same land conveyed by the latter to *E. Wood*. The deed from *Cox* to *Wood* and *Larkin* is alleged to have been duly recorded, and that it is lost, &c. They further deny that at the time of the purchase from *Cox*, they had any knowledge, information or notice that *Davis* claimed a lien or incumbrance upon it, &c. *E. Wood* claims, therefore, as a *bona fide* purchaser.

*Davis* filed a replication. Had he, instead of that, pressed the respondents with proper interrogatories in his bill, and proper exceptions to their answer, tending to search out the extent of their knowledge, information, *hearsay* and *belief*, he would perhaps have reached a different result.

The witness who drew the mortgage describes accurately in his deposition the land intended to be mortgaged. Here were the means, upon a proper case made, to have the instrument reformed; and then he could have proceeded to foreclose. *Hunt* v. *Freeman*, 1 Ohio R. 490.—*Young* v. *Miller*, 10 *id.* 85.—*McLouth* v. *Rathbone*, 19 *id.* 21.—*Lindley* v. *Cravens*, 2 Blackf. 426.—3 Ind. R. 183.—*Gray* v. *Woods*, 4 Blackf. 432.—1 Story's Eq., ss. 110 to 183.

*Singleton*, another of *Davis'* witnesses, states in his deposition that *E. Wood* came to the auditor's office, inquiring about a piece of land he had bought from *Wood* and *Larkin*. He requested *Singleton* to look it up for him, adding that it could be found by a mortgage *Cox* had given to the man he bought from for *some part of the purchase-money, as he (Wood) understood it;* said he wished to know the amount of the mortgage for the purpose of paying it off; but finding the mortgage on the wrong tract of land, he said he should not pay it.

The deposition of *Terrell*, recorder, is to the same effect. His deposition further discloses that the land deeded by *Davis* to *Cox* and by *Cox* to *Larkin* and *Wood*, was the only land then or since owned by *Cox;* that *Cox's* mortgage to *Davis* was on a part of section *thirteen* instead of *fifteen*.

The correct description of the tract as deeded by *Davis* to *Cox*, and presumed to be intended by the mortgage, was the west half of the south-west quarter of section *fifteen*, in township nine, of range seven east. The mortgage, which is made an exhibit, is on the *south-west* half of the south-west quarter of section *thirteen*, in township nine, of range seven east.

On final hearing the bill was dismissed.

Counsel for the complainant make the same mistake in their argument as is made in the bill. Indeed they argue as though they were not aware of the doctrine of the reformation of instruments.

It is urged that *Wood* knew the money to secure which the mortgage was given, was part of the unpaid purchase-

money due from the vendee to the vendor. Very true, that is the state of facts proved; and the pleader should have framed his bill accordingly. It is not what the complainant alleges simply, without proving it, nor what he proves without having alleged it, that is the measure of his remedy; but what he alleges and proves.

Here there were two grounds which the pleader, after reforming the mortgage, might have assumed—framing his bill with a double aspect, and thus placing success beyond the reach of contingency. For if the mortgage was void, so as to prevent a recovery in that direction, it was void for every purpose, and could not be set up as a waiver of the vendor's lien for the purchase-money.

In *Lindley* v. *Cravens*, *supra*, the bill had been dismissed in the Court below; but that decree was reversed in this Court, and the bill ordered to stand for amendment. We can not do that here; because the one stood on demurrer, the other on final hearing.

But in the case at bar, the bill should have been dismissed without prejudice.

In a late case in *Ohio*, it was held that when a deed was evidently designed to convey a fee, a Court of Equity will not lend itself to defeat the intent. If such deed, on a proper case made, would be reformed in equity, no person who would be bound by it when reformed, can found an equity upon its defects. *Williams* v. *The Presbyterian Church et al.*, 1 Ohio State R. (1853) 477.

Perhaps as a corollary to this doctrine, we might reverse the decree below, and order the bill to stand for amendment. In either case the costs fall on *Davis*, and it can make no material difference.

*Per Curiam.*—The decree is reversed at the costs of the plaintiff. Cause remanded, with instructions to the Circuit Court to dismiss the bill without prejudice, and to allow the parties to withdraw their papers, &c.

*W. Herod* and *S. Stansifer*, for the plaintiff.

*W. F. Pidgeon* and *I. Blackford*, for the defendants.